JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Kevin Baird, Kevgar Holdco, LLC, KRB Opportunity Zone Fund, LLC, 400 Reily Street LLC, 400 Reily Street

**DEFENDANTS**

Meyers, Roman, Friedberg & Lewis, Co., LPA

**(b)** County of Residence of First Listed Plaintiff   Cumberland County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Cuyahoga County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Silverang, Rosenzweig & Haltzman, LLC
900 E. 8th Ave., Ste 300, King of Prussia, PA 19406
610-263-0115

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [x] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1391; 28 U.S.C. § 1332(a)(1)
Brief description of cause:
Legal Malpractice/Negligence/Breach of Contract

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
$9.8 million

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
05/24/2023

SIGNATURE OF ATTORNEY OF RECORD
/s/ Mark S. Haltzman

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)**

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: <u>Nature of Suit Code Descriptions</u>.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___80 Greenwood Circle, Wormleysburg, PA 17043___

Address of Defendant: ___101 W. Prospect Ave., Suite 1400, Cleveland, OH 44115___

Place of Accident, Incident or Transaction: ___Newtown Square, PA___

---

**RELATED CASE IF ANY:**

Case Number:_____ Judge:_____ Date Terminated_____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year      Yes ☐  No ☒
   previously terminated action in this court?

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit      Yes ☐  No ☒
   Pending or within one year previously terminated action in this court?

3. Does this case involve the validity or infringement of a patent already in suit or any earlier      Yes ☐  No ☒
   Numbered case pending or within one year previously terminated action of this court?

4. Is this case a second or successive habeas corpus, social security appeal, or pro se case filed      Yes ☐  No ☒
   by the same individual?

I certify that, to my knowledge, the within case ☐ is / ☒ **is not** related to any now pending or within one year previously terminated action in this court except as note above.

DATE: 5/24/2023          ___/s/ Mark S. Haltzman___          ___38957___

          *Attorney-at-Law (Must sign above)*          *Attorney I.D. # (if applicable)*

---

**Civil (Place a √ in one category only)**

*A. Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. All Other Federal Question Cases. *(Please specify):*_____

*B. Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):*_____
- ☐ 7. Products Liability
- ☒ 8. All Other Diversity Cases: *(Please specify)*_____
       ___Legal Malpractice___

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, ___Mark S. Haltzman, Esquire___, counsel of record *or* pro se plaintiff, do hereby certify:

- ☒ Pursuant to Local Civil Rule 53.2 § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☐ Relief other than monetary damages is sought.

DATE: ___May 24, 2023___          ___/s/ Mark S. Haltzman___          ___38957___

          *Attorney-at-Law (Sign here if applicable)*          *Attorney ID # (if applicable)*

NOTE: A trial de novo will be a jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN BAIRD** | : | |
| and | : | |
| **KEVGAR HOLDCO, LLC** | : | **Civil Action No.** |
| and | : | |
| **KRB OPPORTUNITY ZONE FUND, LLC** | : | |
| and | : | |
| **400 REILY STREET LLC** | : | |
| and | : | |
| **400 REILY STREET MANAGEMENT LLC,** | : | |
| | : | |
| *Plaintiffs,* | : | |
| v. | : | |
| | : | |
| **MEYERS, ROMAN, FRIEDBERG & LEWIS,** | : | |
| **CO., LPA** | : | |
| | : | |
| *Defendant.* | : | |

---

## COMPLAINT

---

## INTRODUCTION

1.       Plaintiffs file this action against Defendant, Meyers, Roman, Friedberg & Lewis, Co., LPA ("Defendant" and/or the "Firm"), after the Firm botched an attempt to create a business structure to take advantage of an Opportunity Zone development project in Harrisburg, Pennsylvania. After Plaintiffs spent over a year assembling 40 different parcels for the OZ project and securing non-transferable grants, the Firm's botched structure caused Plaintiffs to lose the tax incentives and protections that were the entire reason Plaintiffs undertook the OZ project. This caused significant financial harm to Plaintiffs. The Firm exacerbated its malpractice by failing to inform Plaintiffs of the issues with the structure created by the Firm, but, instead, undertook a

months-long process through which the Firm strung along Plaintiffs and tried to posture the failure

of the structure as Plaintiffs' choice rather than the Firm's failure.

## THE PARTIES

2.      Plaintiff Kevin Baird is an individual and a resident of Pennsylvania. Mr. Baird is

the statutory agent and/or controlling member or manager of the other Plaintiff entities.

3.      Plaintiff KevGar Holdco, LLC is a limited liability company organized under the

laws of Pennsylvania and has its principal place of business in Cumberland, PA.

4.      Plaintiff KRB Opportunity Zone Fund, LLC is a limited liability company

organized under the laws of Pennsylvania and has its principal place of business in Delaware

County, PA.

5.      Plaintiff 400 Reily Street LLC is a limited liability company organized under the

laws of Pennsylvania and has its principal place of business in Delaware County, PA.

6.      Plaintiff 400 Reily Street Management LLC is a limited liability company

organized under the laws of Pennsylvania and has its principal place of business in Delaware

County, PA.

7.      Defendant, Meyers, Roman, Friedberg & Lewis, Co., LPA, is a legal professional

association organized under the laws of the State of Ohio with its principal place of business

located in Cuyahoga County, Ohio.

## JURISDICTION AND VENUE

8.      Plaintiff incorporates by reference each and every allegation contained in the above

paragraphs as if repeated herein at length.

9.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the

events and/or omissions giving rise to the claim occurred in this judicial district.

10.     The Court has subject matter jurisdiction over this action pursuant 28 U.S.C. § 1332(a)(1) because it is a civil action in which (i) the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs, and (ii) there is complete diversity of citizenship between Plaintiffs, on one hand, and Defendants, on the other hand.

11.     Each Plaintiff was and is a citizen of the Commonwealth of Pennsylvania, as Kevin Baird is a citizen of Pennsylvania; the two members of KevGar Holdco, LLC are each citizens of Pennsylvania; KRB Opportunity Zone Fund LLC has two members - Mr. Baird and his wife, Jill Baird (also a Pennsylvania citizen); and KRB Opportunity Zone Fund is the sole member of 400 Reily Street Management, LLC, which in turn is the sole member of 400 Reily Street, LLC. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 102 (3d Cir. 2015).

12.     Defendant, upon information and belief based upon a diligent inquiry, is a citizen of the State of Ohio, as it is a legal professional association organized under the laws of the State of Ohio (which is treated as a corporation under the laws of the State of Ohio), with a principal place of business in Ohio.

13.     This Court has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of transacting business in Pennsylvania with the Plaintiff entities, and directed those activities, including providing legal services, towards the creation of an OZ Fund and related project in Pennsylvania.

## FACTUAL BACKGROUND

**A.      *Opportunity Zone Funds And Opportunity Zone Businesses Have Been Created As A Means Of Saving On Capital Gains Tax Liability.***

14.     The federal Tax Cuts and Jobs Act, signed into law on December 22, 2017 (the "Act"), authorized the Secretary of the Treasury to designate certain areas in the United States, each to be known as a "Qualified Opportunity Zone" ("QOZ"), defined as "an economically

distressed community where new investments, under certain conditions, may be eligible for preferential tax treatment." Localities qualify as QOZs if they were nominated for that designation by a state, the District of Columbia, or a U.S. territory and that nomination was certified by the Secretary of the U.S. Treasury via his delegation of authority to the Internal Revenue Service ("IRS").

15.     QOZs are designed to spur economic development by providing tax incentives for investors who invest new capital in businesses operating in the QOZ, including (a) deferral of certain capital gains liabilities on prior eligible gain realized by an investor from the sale of investment property, if that gain is invested in a Qualified Opportunity Fund (QOF), which deferral lasts until the earlier of the sale of the QOF interest or December 31, 2026, (b) if the investor holds its investment in the QOF for at least five (5) years, there is a ten percent (10%) exclusion of the deferred gain, (c) if the investor holds its investment in the QOF for at least seven (7) years, the exclusion increases to fifteen percent (15%) and (d) if the investor hold its investment in the QOF for at least ten (10) years, the investor is eligible for an adjustment in the basis in its QOF investment such that the gain in the QOF investment itself (or the investor's share in any gain on sale of the underlying QOZ assets) is never taxed.

16.     A QOF is an investment vehicle that files either a partnership or corporate federal income tax return and is organized for the purpose of investing in QOZ property. "QOZ property" is a QOF's qualifying ownership interest in a corporation or partnership that operates a QOZ business in a QOZ, or direct ownership of qualifying QOZ business property. In order to qualify, (a) the interest in the QOZ business must be acquired after December 31, 2017, solely in exchange for cash, (b) the corporation or partnership in which the QOF invests must be a QOZ business and

(c) for 90% of the period in which the QOF held its investment, the business in which it invested must be a QOZ business.

17.     An investor is required to invest the capital gains that it seeks to defer under the Act within one hundred eighty (180) days of the date on which the gain would be recognized for federal income tax purposes, typically December 31.

18.     QOZ property is permitted to fall into only three (3) categories: QOZ stock, QOZ partnership interest or QOZ business property.

19.     Subject to certain exceptions, cash and working capital in excess of ten percent (10%) of total assets do not qualify as QOZ property when held by a QOF.

20.     The term "QOZ business property" refers to tangible property that:

      a.     is used in a trade or business of the QOF or in a QOZ business;

      b.     was purchased after December 31, 2017;

      c.     where the original use of the property in the QOZ commenced with the QOF or QOZ business, or

      d.     the property was substantially improved by the QOF or QOZ business; and

      e.     during substantially all of the time the QOF or QOZ business held the property, substantially all of the use of the property was in a QOZ.

21.     Cash contributed to a QOF is subject to a "safe harbor" exception from the limits on holding cash or working capital if the cash is deployed to "substantially improve" the QOZ business property within 30 months of its acquisition, which time period may be extended to up to 86 months under certain circumstances.   "Substantially improve" means improvements to the property at least equal to the QOZ business' or QOF's basis in the property when it is acquired.

22.     To summarize, under the Act, in order receive the capital gains tax deferral and other benefits of the QOF structure, an investor must invest its capital gains, in cash, in a QOF, which in turn must invest the funds in either a partnership or shareholder interest in a QOZ business or directly in QOZ business property with 180 days of when the capital gains would otherwise be recognized for federal tax purposes (the date on which the gain was generated by a direct sale, or December 31 of the year in which the gains were realized by a partnership or corporation in which the investor is a member or shareholder) and, if the property is to be substantially improved, that improvement generally must take place within 30 months of the investment, subject to extensions of time if certain conditions are met.  The QOF must hold at least 90% of its assets in QOZ property or QOZ business property, which is tested at six-month intervals during the taxable year of the QOF.

23.     Recognizing the COVID-19 pandemic and the federal disaster declaration in connection therewith, the IRS issued Notice 2020-39, 2020-26 and 2021-10 (the "IRS Notices"), which extended the deadlines for the 180-day investment period, the 30-month substantial improvement period for QOZ property and provided relief for the 90% investment rule and working capital safe harbor.

**B.      Baird Sells Investment Properties In Philadelphia And Decides To Create An OZ Fund**

24.     Kevin Baird had previously developed properties in Philadelphia, which he began selling throughout 2019.   Consequently, he was looking to use the net proceeds from those property sales to form a QOF to defer gains from the sale of those properties.

25.     In or around July of 2019, Baird agreed to partner with Gary Nalbandian, a retired founder of several local Harrisburg banks, for purposes of redeveloping portions of Midtown Harrisburg.

26.     Baird and Nalbandian formed KevGar Holdco, LLC, with the intent to use it simply as an operating entity that could fund deposits for parcels of land they sought to acquire and develop.

27.     On or about December 14, 2020, KevGar Holdco, LLC engaged the Firm to represent it, Kevin Baird and their affiliated companies to structure the QOF and QOZ business that would acquire the Harrisburg properties as a QOZ development.

28.     In furtherance of this business pursuit, Baird met with representatives of Harrisburg government to discuss their vision for the Harrisburg Midtown QOZ development.

29.     The Harrisburg government representatives were enthusiastic to the point that they offered to assist in the acquisition of some parcels across from the new Federal Courthouse slated to open in January of 2023.

30.     One of the key requirements of that development was that it would need to create excess parking capacity for the new Federal Courthouse.

31.     After significant "legwork," Baird through his newly formed entity created by the Firm, 400 Reily Street, LLC, acquired from The Harrisburg Redevelopment Authority (HRA) approximately half of the 40 lots required to assemble an entire city block across from the new Federal Courthouse.

32.     The assemblage alone took him nearly 2.5 years - negotiating with multiple different sellers: individuals, estates, universities, and trusts.

33.     After considering different external funding sources, Baird decided to retain the Firm based on a recommendation from a contact at PNC Bank.

34.     Baird hired the Firm to form the required structure & entities for him and his wife so that they could, in the most efficient tax-compliant manner, deploy capital gains from the sale of the Philadelphia properties into the Harrisburg Project.

35.     Ultimately, Baird invested close to $800,000 of his capital gains from his Philadelphia sold properties into the Harrisburg Project.

36.     Baird also advised the Firm that he wanted a structure that could allow others such as PNC's fund or any other individual investors to invest in the project when the offering was ready.

37.     The Firm created each of KRB Opportunity Zone Fund, LLC, 400 Reily Street LLC, and 400 Reily Street Management LLC, and prepared operating agreements for each of these entities.  These entities were all part of a corporate structure that recommended by the Firm to Baird to allow him to properly achieve his goals of having an OZ Fund, capital gains minimization from his Philadelphia property sales, and investment growth (all under the Opportunity Zone statutes).

38.     As the QOZ investment returns could not be clearly defined until there was an approved plan and preliminary construction costs to understand what sort of revenues the project could spin off, Baird continued to work to secure approvals for the project.

39.     In April of 2021, the project received zoning approval from the Harrisburg Zoning Commission to build 85 apartments, 600 parking spaces, a grocery store, restaurant and coffee shop.

40.     Unfortunately, as a result of the ongoing COVID-19 pandemic, the project was stalled.  In addition, due to the business effects of COVID, parking garages now had little chance of institutional funding.

41.     With remote work for federal & state employees, and a promised lease from the GSA for the Courthouse employees that never materialized, prospects for funding the project were now unlikely. Moreover, Baird and his entities' first RCAP application, sponsored by the previous mayor of Harrisburg, requesting $5M from the state, was rejected.

42.     As a result, Baird and his entities were forced to re-imagine the project.

43.     Due to an election and change in the Harrisburg government in January of 2022, Baird met with the new mayor, who agreed to support Baird's efforts for a re-imagined multifamily development project consisting of 142 apartments, 175 parking spaces and 10,000 square feet of ground floor retail.  Baird then began to redesign the project to prepare for the necessary zoning variances.

44.     In April of 2022 Plaintiffs' lobbyist firm secured $1M in stimulus funds allocated for projects that were stalled due to increase costs and delays related to COVID-19. A few weeks after that, the project was awarded an additional $2M from the State's RCAP fund. Those awards/grants were not transferrable.

45.     To cap off the year, after 6 months of redesigning and working with City Planning, Plaintiffs were successful in rezoning the site to build the 142 apartments on November 21, 2022. As such, everything was falling into line on the development/construction side of the QOZ project.

### C.     *The QOZ Structure Created By The Firm Is Discovered To Be Defective And The Firm Attempts To Misdirect Baird From Discovering Those Defects.*

46.     Despite the Firm billing itself as an expert in structuring QOZ and QOF investment vehicles, KRB Opportunity Fund, LLC, and Baird were assessed thousands of dollars in IRS penalties due to errors in their tax returns prepared by the Firm.

47.     These errors were first discovered in August of 2022 when Baird brought in a new accountant, Brian Gallagher from GMS Surgent, who determined that the Firm had used the wrong

EIN on the previously filed 2020 Return and were proffering that same incorrect EIN for the fiscal 2021 Return Gallagher was reviewing.

48.    In addition to the mistakes in the preparation of the returns, the QOF structure prepared by the Firm failed to meet the 90% investment test, resulting in further penalties for non-compliance.

49.    Indeed, after reviewing potential avenues to try to remedy the OZ structures, the Firm's compounded errors ultimately proved fatal to the Fund.  After Gallagher reported his preliminary concerns, Baird drafted an email to Mario Fazio, Esquire, of the Firm (he had taken over for Michelle Gearity, Esq., who had left the Firm), raising the issues and asking for an explanation.  [*See* Exhibit 1.]

50.    It is Plaintiffs' understanding the Gearity did the work with the initial structuring of the various QOZ entities and preparation of the Operating Agreements for those entities.

51.    Fazio then exchanged a series of calls/emails with Brian Gallagher attempting to work through the structuring issues.

52.    During these exchanges, Fazio tried to downplay the Firm's errors and asserted the soundness of the Fund's structure; however, Fazio was already planting seeds for a structural overhaul of the entities, stating in an e-mail dated August 5, 2022, "In addition, we should schedule a time to discuss the structure of the fund, along with the subsidiary entities to determine if this is the optimal structure for you, which depends significantly on your future development plans and fundraising. As of right now, with the anticipated real estate development and future anticipated rental income your current structure should work, but we should have a discussion nevertheless." [*See* Exhibit 1, at 5-6.]

53.     Even then, the Firm failed to properly evaluate the Fund structure and accurately report back to Baird that the initial structure was defective and restructuring was mandatory and that the capital gains funds invested to date by Baird were not in compliance with the deferral requirements and the entire capital gains tax liability for the gains invested to date would be due to the IRS in that current fiscal year.

54.     In fact, Fazio informed Baird in an August, 2022, email that an additional $9,671.94 in penalties would be imposed on Baird (and/or his entities) for fiscal 2021 due to the structural failings of the QOF structure set up by the Firm. [*See* Exhibit 2, at 5.]

55.     Between August and December, 2022, members of the Firm had multiple communications with Baird in which they attempted to deflect responsibility for the defective structure they created and attempted to back-door suggested "changes" to the structure, all the while failing and refusing to disclose to Baird that these "changes" were actually attempts to fix the defective structure.

56.     This culminated in a call on December 28, 2022, with Baird and Fazio and multiple other attorneys from the Firm (Brian Dardis, Holly Nye, and Linda Cespi).  In this call, Fazio and the team from the Firm laid out a "work-around," the net effect of which was a "reset" that would fail to recover the deferral of the gains that Baird had already invested in the Fund and would jeopardize the grants and funding Baird had secured for the project.

57.     The reconstituted structure was not acceptable to Baird.  When Baird questioned whether this was some sort of workaround due to the initial structure being defective, after a long pause, Fazio admitted that it was.

58.     When Baird asked on the call about the capital gains effect on the money already invested into the project by him and his wife, Fazio apologized and said "unfortunately, none of those expenditures will qualify under the [new] structure."

59.     Accordingly, Baird would be required to recognize all of the deferred capital gains on his next tax return.

60.     Fazio apologized at the end of the call and expressly stated "I wish I was involved from the outset, and this would not have happened."

61.     Fazio did not, however, explain why he had not admitted this known issue in August, but instead strung along Baird for months.

62.     Following that call, Fazio issued a self-serving e-mail that never addressed the failure of QOZ Fund's original structure recommended by the Firm, but rather, attributed the winding down of the Fund  as resulting from a choice Baird was electing after dedicating almost 3 years to the project.

### D.     Malpractice Claim, Settlement Discussions And The Firm's Rush To The Courthouse In Ohio

63.     On January 16, 2023, counsel for Baird reached out to the Firm to register a malpractice claim, communicate interest in resolving the situation amicably, and request a tolling agreement.  Counsel retained by the Firm's malpractice carrier became involved, and the parties engaged settlement discussions.  In order to assist in the discussions and quantify the various categories of financial harm suffered by Plaintiffs, and at their own cost, Baird and the Defendants commissioned an initial assessment of their damages by Stephen J. Scherf, CPA/CFF, CFE, of Asterion.

64.     Mr. Scherf's preliminary analysis calculated the various categories of damages at $9,802,989, comprised of five distinct categories:

| Description | Amount |
|---|---|
| Loss of Baird Capital Gain Deferral | $146,822 |
| Repayment of COVID Grant | 1,000,000 |
| Net Present Value of Project Cash Flows | 8,541,975 |
| Net Present Value of Capital Gain Tax | 1,614,192 |
| Less: Value of Land | (1,500,000) |
| **Total** | **$9,802,989** |

65.    To aid in settlement discussions, a copy of Mr. Scherf's report was provided to the Firm through its counsel on February 17, 2023.  Plaintiffs indicated that they were interested in resolving the matter but were prepared to litigate if necessary.  During this period, the parties also continued to discuss via e-mail the terms of a potential tolling agreement and settlement issues, continuing from late February and even on the telephone on March 7, 2023.

66.    Rather than respond with any sort of further settlement efforts or indicate that such settlement discussion would be terminated, the next "communication" Defendants received was on March 10, 2023, in which a copy of a Declaratory Judgment action (that had been filed that day in the United States District Court for the Northern District of Ohio) was provided.

67.    The Firm's rush to the Courthouse (which was likely being planned while engaging Baird and his entities in settlement discussions) was clearly designed to cut-off this action and was entirely improper.  Plaintiffs intend to seek dismissal of that Declaratory Judgment Action.

68.    Based upon the above referenced facts and subsequent investigation, Plaintiffs contend that the Firm committed malpractice and/or failed to adhere to the proper required standard of care, including but not limited to the following:

a.    KRB Opportunity Zone Fund LLC is organized as a partnership, held 99% by Mr. Baird and 1% by his wife, Jill Baird. KRB Opportunity Zone Fund is the sole member of 400 Reily Street Management, LLC, which in turn is the sole member of 400 Reily Street, LLC. Since both LLCs below KRB Opportunity Zone Fund LLC in the structure are single-member LLCs, they are disregarded entities for tax purposes. The consequence of this is KRB Opportunity Zone Fund LLC would be

not be deemed a QOF investing in a QOZ business, but rather a direct investor in Qualified Opportunity Zone Business Property ("QOZBP"). To be compliant with the QOZ regulations and avoid the assessment of penalties, KRB Opportunity Zone Fund LLC was required to have at least 90% of its assets in QOZBP, and would have needed to establish compliance within 6 months of its inception as a QOF. This direct structure and the related testing thresholds are restrictive when compared to the QOF investing in a partnership or share interest in a separate Qualified Opportunity Zone Business ("QOZB").

b.  The indirect structure, in which a QOF holds an interest in an eligible entity that qualifies as a QOZB, and that interest is at least 90% of the QOF's assets, provides the most flexibility, as QOZBs are subject to a lower 70% testing threshold for the QOZ business property test. QOZBs are also allowed the 31-month working capital safe harbor period. This permits QOZBs to hold reasonable working capital without failing the 70% testing threshold or exceeding the 5% limitation on Nonqualified Financial Property. KRB Opportunity Zone Fund LLC was not able to enjoy the benefits of an ownership interest in a QOZB, due to the Firm's structure that created two subsidiary entities with disregarded status, instead of being organized as a partnership or corporation.

c.  The ownership structure implemented by the Firm exposed KRB Opportunity Zone Fund LLC to the more restrictive testing thresholds of a QOF directly invested in QOZBP, resulting in fines for non-compliance and potential involuntary decertification of the QOF.

d.  The "new," revised structure proposed by Fazio and the Firm would have established a new subsidiary partnership, with KRB Opportunity Zone Fund LLC holding a 99% interest and Mr. Baird holding a 1% interest. Under the revised structures, Mr. Baird would have needed to generate additional capital gains to deploy into the new partnership for QOZ deferral benefits. Mr. Baird's previously deferred capital gains would not qualify under the new proposed structure.

e.  Upon information and belief, the Firm also failed to advise Baird of the COVID-19 related relief afforded by the IRS Notices, and failed to take steps to seek that relief.

69.     As a direct and proximate result of the above-referenced legal malpractice and/or breach of the standard of care, Plaintiffs have suffered in excess of $9.8 million in damages as estimated in the Scherf/Asterion report.

### COUNT 1
### PLAINTIFFS v. THE FIRM
### LEGAL MALPRACTICE/NEGLIGENCE

70.     Plaintiff incorporates by reference each and every allegation contained in the above paragraphs as if repeated herein at length.

71.     To establish a cause of action for legal malpractice, a claimant must demonstrate the existence of an attorney-client relationship giving rise to a duty, a breach of that duty, and damages proximately caused by that breach.

72.     An attorney-client relationship may be implied from the conduct of the parties where: (1) the purported client sought advice or assistance from the attorney; (2) the advice sought was within the attorney's professional competence; (3) the attorney expressly or impliedly agreed to render such assistance; and/or (4) it is reasonable for the putative client to believe the attorney was representing him.

73.     Each of the Plaintiffs was a client of the Firm, as the Firm's attorneys expressly performed legal services for each of the Plaintiffs (regardless of the entity that executed the engagement letter with the Firm), including, but not limited to: creating a structure that was intended to be used for personal capital gains of Mr. Baird, individually, from the sales of the Philadelphia properties; creating each of KRB Opportunity Zone Fund, LLC, 400 Reily Street LLC, and 400 Reily Street Management LLC, and prepared operating agreements for each of these entities; and, performing work for all of the Plaintiffs and submitting bills to Mr. Baird and KevGar for payment.

74.     The Firm acted through the above-referenced attorneys who provided legal services to Plaintiffs.

75.     The Firm represented itself as having experience, expertise and competence in the creation, structuring, and implementation of QOZ investments, and specifically undertook to create, structure, and implement such structure and investment for Plaintiffs.

76.     For these reasons stated above, the Firm failed to properly do so, and its failures constituted a breach of the professional standard and duty of care that the Firm owed to Plaintiffs. The Firm failed to exercise such skill, prudence, and diligence as members of its profession commonly possess and exercise under similar circumstances.

77.     The Firm further breached its duty of care to Plaintiffs by failing to disclose and communicate the issues in the structure when the Firm knew or should have known such issues existed (at least as early as August of 2022).  Instead of openly communicating those issues, the Firm actively concealed its errors and strung Plaintiffs along through the end of that year until proposing its "new" structure in December of 2022, and then admitting its malpractice by and through Fazio.

78.     This concealment and redirection by the Firm was done in bad faith and in an attempt to have the Firm "blame the client" for the Firm's failures.

79.     As a direct and proximate result of the above-referenced legal malpractice and/or breach of the standard of care, Plaintiffs have suffered in excess of $9.8 million in damages as estimated in the Scherf/Asterion report, along with great inconvenience, expense, investment of Mr. Baird's time in attempting to find a solution for the Firm's malpractice.

WHEREFORE, Plaintiffs request judgment in their favor and against Defendant for damages in excess of $9.8 million, plus interest and costs and such other and further relief as the Court shall deem appropriate.

### COUNT 2
### PLAINTIFFS v. THE FIRM
### BREACH OF CONTRACT

80.     Plaintiffs incorporate by reference each and every allegation contained in the above paragraphs as if repeated herein at length.

81.     Plaintiffs retained the Firm to perform legal services, including, but not limited to: creating a structure that was intended to be used to properly defer taxes on personal capital gains of Mr. Baird, individually, from the sales of the Philadelphia properties; creating each of KRB Opportunity Zone Fund, LLC, 400 Reily Street LLC, and 400 Reily Street Management LLC; and, preparing operating agreements for each of these entities; and performing work for all of the Plaintiffs, for which the Firm submitted bills to Mr. Baird and KevGar for payment.

82.     The Firm represented itself as having experience, expertise and competence in the creation, structuring, and implementation of QOZ investments, and specifically agreed to create, structure, and implement such structure and investment for Plaintiffs.

83.     Upon entering into its engagement on behalf of Plaintiffs, the Firm became contractually obligated to do so in a professional manner in accordance with the exercise of such skill, prudence, and diligence as members of its profession commonly possess and exercise under similar circumstances

84.     For these reasons stated above, the Firm failed to properly do so, and its failures constituted a breach of the aforementioned agreement.

85.     The Firm further exacerbated its breach by failing to disclose and communicate the issues in the structure when the Firm knew or should have known such issues existed (at least as

early as August of 2022).  Instead of openly communicating those issues, the Firm actively concealed those issues and strung Plaintiffs along through the end of that year until proposing its "new" structure in December of 2022, and then admitting its malpractice by and through Fazio.

86.     This concealment and redirection by the Firm was done in bad faith and in an attempt to have the Firm "blame the client" for the Firm's failures.

87.     As a direct and proximate result of the above-referenced legal malpractice and/or breach of the standard of care, the Firm has breached its contractual obligations to Plaintiffs, Plaintiffs have suffered in excess of $9.8 million in damages as estimated in the Scherf/Asterion report, along with great inconvenience and expense.

WHEREFORE, Plaintiffs request judgment in their favor and against Defendant for damages in excess of $9.8 million, plus interest and costs and such other and further relief as the Court shall deem appropriate.

## COUNT 3
### PLAINTIFFS v. THE FIRM
### MISREPRESENTATION

88.     Plaintiff incorporates by reference each and every allegation contained in the above paragraphs as if repeated herein at length.

89.     Plaintiffs retained the Firm to perform legal services, including, but not limited to: creating a structure that was intended to be used to properly defer personal capital gains of Mr. Baird, individually, from the sales of the Philadelphia properties; creating each of KRB Opportunity Zone Fund, LLC, 400 Reily Street LLC, and 400 Reily Street Management LLC; and, preparing operating agreements for each of these entities; and, performing work for all of the Plaintiffs ,for which the Firm submitted bills to Mr. Baird and KevGar for payment.

90.    The Firm represented itself as having experience, expertise and competence in the creation, structuring, and implementation of QOZ investments, and specifically agreed to create, structure, and implement such structure and investment for Plaintiffs.

91.    For the reasons stated above, the Firm misrepresented to Plaintiffs its experience, expertise and competence in its representation of Plaintiffs.

92.    The Firm further exacerbated its breach by failing to disclose and communicate the issues in the structure when the Firm knew or should have known such issues existed (at least as early as August of 2022).   Instead of openly communicating those issues, the Firm actively concealed those issues and strung Plaintiffs along through the end of that year until proposing its "new" structure in December of 2022, and then admitting its malpractice by and through Fazio.

93.    This concealment and redirection by the Firm was done in bad faith and in an attempt to have the Firm "blame the client" for the Firm's failures.

94.    As a direct and proximate result of the above-referenced legal malpractice and/or breach of the standard of care, Plaintiffs have suffered in excess of $9.8 million in damages as estimated in the Scherf/Asterion report, along with great inconvenience and expense.

WHEREFORE, Plaintiffs request judgment in their favor and against Defendant for damages in excess of $9.8 million, plus interest and costs and such other and further relief as the Court shall deem appropriate.

**SILVERANG, ROSENZWEIG
& HALTZMAN, LLC**

By:   /s/ Mark S. Haltzman
      Mark S. Haltzman, Esquire
      Malcolm S. Gould, Esquire
      PA Atty ID No.  38957/80254
      Woodlands Center
      900 E. 8th Ave., Suite 300
      King of Prussia, PA 19406
      (610) 263-0115
      mhaltzman@sanddlaywers.com
      mgould@sanddlawyers.com
      *Attorneys for Plaintiffs*