**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Kevin Baird; KevGar Holdco, LLC; 400 Reily Street LLC; 400 Reily Street Management LLC**<br><br>*Plaintiffs,*<br><br>**v.**<br><br><br>**Meyers, Roman, Friedberg & Lewis, Co., LPA**<br>*Defendant,* | **Case No. 2:23-cv-01974** |

<u>**MEMORANDUM**</u>

Baylson, J.                                                                  October 27, 2023

### I.      Background

Pennsylvania Plaintiffs hired Defendant Ohio law firm to help them qualify for significant tax benefits on a Pennsylvania real estate project. After two years of work, Plaintiffs discovered the project did not meet the criteria for the benefits and scuttled their plans. Upon this revelation, Plaintiffs tried to settle with the law firm for alleged malpractice. During settlement negotiations, the Defendant law firm filed for declaratory judgment in Ohio federal court. Then, Plaintiffs brought this suit. The Ohio law firm asks this Court to dismiss this case for lack of personal jurisdiction in Pennsylvania, improper venue based on a forum selection clause, and/or stay proceedings in deference to the Ohio action. This Court finds it retains personal jurisdiction over the firm and the law firm waived the forum selection clause. Further, the Court will not stay this proceeding.

**A.  Plaintiffs' Allegations**

Kevin Baird, KevGar Holdco, LLC, KRB Opportunity Zone Fund, LLC, 400 Reily Street LLC, and 400 Reily Street Management LLC (collectively "Plaintiffs") bring this action against Defendant Meyers, Roman, Friedberg & Lewis, Co. LPA ("Meyers Roman") for legal malpractice and negligence, breach of contract, and misrepresentation. Pl. Comp. ¶¶ 70–94, ECF No. 1.

Meyers Roman is an Ohio-based law firm with its principal place of business in Cuyahoga County, Ohio. Pl. Comp. ¶ 7. Baird hired Meyers Roman to "form the required structure & entities… [to,] in the most efficient tax-compliant manner, deploy capital gains from the sale of the Philadelphia properties" into a real estate development project in Harrisburg. Id. ¶ 34. Seeking to benefit from the federal Tax Cuts and Jobs Act's ("TCJA") tax advantages and defer capital gains from the net proceeds of real estate sales, Baird decided to form a Qualified Opportunity Fund ("QOF") and Qualified Opportunity Zone ("QOZ") businesses. Id. ¶¶ 14–24. The tax benefits were potentially significant, but in order to realize them, Baird needed to invest his gains in areas designated as eligible QOZs. Id. A locality qualified as a QOZ if the federal government determined the area was an "economically distressed community" meriting preferential tax treatment. Id. A section of Harrisburg, Pennsylvania had acquired that designation. Id. ¶¶ 24–27.

Baird partnered with Gary Nalbandian to redevelop portions of Midtown Harrisburg and formed plaintiff KevGar as an operating entity. Id. ¶¶ 25–26. On December 14, 2020, Baird and KevGar entered into a legal services agreement with Meyers Roman for "the development of a mixed-use project in a designated opportunity zone in Harrisburg, Pennsylvania (the "Project") and any future matters which may evolve from it." Leg. Serv. Agreement 1; Ex. 2 to Def. Mot. to

Dismiss, ECF No. 11–3. To Baird, the firm held itself out as "expert[ ] in structuring QOZ and QOF investment vehicles." Pl. Comp. ¶ 46. To gain the tax benefit motivating the Project, the QOFs had to meet specific liquidity and financing thresholds outlined in the TCJA. Id. ¶¶ 14–23; 68.

The representation covered three distinct subfields, including (1) assisting in structuring the investment fund between Baird and other equity / debt partners in the Harrisburg project, (2) chartering a new Pennsylvania limited liability corporation to "serve as the opportunity zone vehicle" in Harrisburg, and (3) creating a memorandum for potential equity / debt partners in the Harrisburg project. Leg. Serv. Agreement 1–4. Defendant capped its fees for these services at $45,000. Leg. Serv. Agreement 2.

The contract also included a forum selection clause, requiring that any dispute "arising out of or under this agreement" be litigated "only" in two Ohio state courts. Leg. Serv. Agreement 5. The clause prohibited litigation in federal courts. Id. 5.

For roughly two years, Meyers Roman worked on the Harrisburg project. Pl. Comp. ¶¶ 24–62. During that time, it was the primary firm representing the QOZ businesses and QOF. Id. Meyers Roman created multiple Pennsylvania LLCs during its representation for Baird: plaintiffs KRB Opportunity Zone Fund, LLC; 400 Reily Street LLC, and 400 Reily Street Management. It also filed corporate organization papers with the Pennsylvania Secretary of State and listed a Meyers Roman attorney as the "Organizer" for each LLC. LLC Organizing Papers 3, 7; Ex. 6 to Pl. Resp. to Def. Mot. to Dismiss. Meyers Roman also prepared the operating agreements for each LLC, to be interpreted per Pennsylvania law. KRB Operating Agreement ¶ 13.10; Ex. 7 to Pl. Resp. to Def. Mot. to Dismiss; 400 Reily Street Management Operating Agreement ¶ 16; Ex. 8 to Pl. Resp. to Def. Mot. to Dismiss. Unsurprisingly, Plaintiffs repeatedly communication with

3

their lawyers via email and telephone about the Harrisburg project. Pl. Resp. 10. All actions were remote. Meyers Roman performed its contract entirely while located within Ohio. Dardis Aff. ¶¶ 34–7. Due to economic shocks from the COVID-19 pandemic, development stalled in 2021. Pl. Comp. ¶¶ 37–40. Then, in 2022, Baird reimagined the Project into a "multifamily development [ ] consisting of 142 apartments, 175 parking spaces, and 10,000 square feet of ground floor retail." Id. ¶ 43. He secured three million dollars in non-transferable public funding in early 2022 for the development. Id. ¶ 44.

At the same time in 2022, the IRS assessed Plaintiffs thousands of dollars in penalties for errors in their tax returns, which Meyers Roman had prepared. Pl. Comp. ¶ 46. But the graver consequence followed. After a lengthy back and forth, Baird discovered in the summer/fall 2022 that the corporate structures of the LLCs were not compliant, in their present form, with the TCJA. Id. ¶¶ 46–62; 68. At its core, the membership composition of the LLCs subjected them to greater capital requirements and a shorter timeline to invest those assets into QOZ business than an alternative, more optimal membership structure. Id. ¶ 68. Because of the corporate structure, Plaintiffs claim, they could not receive deferred capital gains, which was Baird's primary motivation for the Harrisburg project from the onset. Id. ¶ 24. Moreover, the Project became far less attractive to outside investors without the conferred tax benefit. Id. ¶ 49. Plaintiffs contend Meyers Roman misrepresented, through phone and email communications, their exposure for several months in late 2022 even after discovering the structural error. Id. ¶¶ 46–62.

## II.   Procedural History

Believing litigation was imminent, Meyers Roman filed for a declaratory judgement in the Northern District of Ohio against Plaintiffs on March 10, 2023. Meyers, Roman, Friedberg &

<u>Lewis, Co., LPA v. Kevin Baird et al.</u>, No. 23-CV-00491 (N.D. Oh. 2023) ("Ohio action"); Baird Aff. ¶¶ 44–47. The Ohio action seeks a declaration of judgment:

(1) that Meyers Roman was not negligent in providing legal services to Baird;

(2) that any such lawsuit by Baird would need to be filed in the forum in the contract; and

(3) Meyers Roman's representation was limited to KevGar.

Meyers Roman Comp. ¶ 13; Ex. 4 to Def. Mot. to Dismiss. Plaintiffs filed suit ("the Pennsylvania action") in this Court on May 24, 2023. They allege in Count I that Meyers Roman breached the contract, in Count II that Meyers Roman committed legal malpractice through negligent representation, and in Count III that Meyers Roman intentionally misrepresented the QOZ and QOF deficiencies to Plaintiffs after discovering the errors. Pl. Comp. ¶¶ 70–94.

### A. Meyers Roman's Motion to Dismiss

Meyers Roman filed a Motion to Dismiss making three arguments. First, Meyers Roman contends this Court lacks personal jurisdiction over the firm pursuant to Rule 12(b)(2). The briefing lays out the two types of personal jurisdiction: general and specific. Def. Mot. to Dismiss 6. The firm contends general jurisdiction does not lie, and Plaintiffs agree. Regarding specific jurisdiction, Meyers Roman relies on four principal facts for why the Court does not have jurisdiction:

(1) the firm is an Ohio law firm with its sole offices located in Ohio;

(2) the firm did not solicit Plaintiffs or otherwise advertise in the Pennsylvania market;

(3) the firm does not have a physical presence, bank accounts, real property, telephone numbers, employees or staff, or any assets in Pennsylvania; and

(4) the firm completed all of its legal work for Plaintiffs in Ohio.

Def. Mot. to Dismiss 8, ECF No. 11; Dardis Aff. ¶¶ 4–8; Ex. 1 to Def. Mot. to Dismiss.

Additionally, Meyers Roman argues for a dismissal or transfer of this cause based on the forum

selection clause in the Legal Services Agreement.[1] Def. Mot. to Dismiss 9. The firm contends

the clause is valid and binding absent extraordinary circumstances, none of which are presented.

Id. 10. Meyers Roman also argues the clause binds the non-signatory LLCs—who are plaintiffs

in this action—formed during the firm's representation of Baird. Id.

Meyers Roman makes one argument in the alternative. Should the Court reject the firm's

first two arguments, it argues for dismissal or transfer under the first-filed rule. Def. Mot.

Dismiss 9–11. When the same action is pending in two federal courts, the first-filed rule

encourages the later-filed court to enjoin proceedings in deference to the first-filed court. Id. 11–

12. Meyers Roman argues the first-filed rule applies because the Ohio action was filed first and

covers the same substantive matters as this action. Id.

### B.  Plaintiffs' Response

First, Plaintiffs argue Pennsylvania retains specific personal jurisdiction over Meyers

Roman. Plaintiffs' key factual assertions for Count I and Count II include:

(1) the firm communicated with Plaintiffs repeatedly over two years of representation
about the Harrisburg project;

(2) the firm structured and drafted organizing paperwork for several of the Pennsylvania
Plaintiff QOF and QOZ businesses;

(3) the firm filed the registration paperwork for the Pennsylvania Plaintiff QOF and QOZ
businesses with the Pennsylvania Secretary of State;

---

[1] The agreement states: "Any dispute arising out of or under this agreement shall be subject only to Bedford Municipal Courts unless the jurisdictional limits for said Municipal Court shall be exceeded at which time the Cuyahoga County Court of Common Pleas shall have sole jurisdiction." Leg. Serv. Agreement 5.

(4) the registration paperwork listed a Meyers Roman attorney as the "Organizer" under Pennsylvania law; and

(5) the firm created operating agreements for the Pennsylvania Plaintiff QOF and QOZ businesses to be interpreted under Pennsylvania law.

Pl. Resp. 12–13. For Count III, Plaintiffs argue:

(1) the Firm omitted and misrepresented information to Plaintiff, while he was in Pennsylvania, after discovering the structural errors in the Plaintiff QOF and QOZ businesses;

(2) the firm made similar misrepresentations to Plaintiffs' accountant while he was in Pennsylvania; and

(3) the firm's behavior injured Plaintiffs in Pennsylvania.

Pl. Resp. 12–13 Overall, Plaintiffs emphasize the underlying matter of representation—the Harrisburg project—is in Pennsylvania. Id. 14–16.

Second, Plaintiffs argue that Meyers Roman waived enforcement of the forum selection clause when the firm filed suit in the Northern District of Ohio, a venue the forum selection clause prohibited. Pl. Resp. 16–19.

Finally, Plaintiffs ask the Court not to follow the first-filed rule. Plaintiffs predict the Ohio court will decline jurisdiction over Meyers Roman's declaratory suit. Pl. Resp. 19–20. Regardless, Plaintiffs contend, this Court should proceed because the first-filed rule is not stringently applied when the first-filed action is for declaratory relief or in anticipation of the later-filed lawsuit. Id. 20.

### 1. Summary of Baird's Affidavit

Plaintiffs submitted an affidavit from Baird in their response regarding Meyers Roman's initiation of the Ohio action and affirming to many of the factual allegations in the Complaint. On January 16, 2023, Baird "reached out to the Firm to register a malpractice claim, communicate interest in resolving the situation amicably, and request a tolling agreement." Baird Aff. ¶ 44, Ex. 5 to Pl. Resp. to Def. Mot. to Dismiss, ECF No. 18–5. Plaintiffs commissioned an initial assessment of damages to aid in settlement discussions, which they sent to Meyers Roman on February 17, 2023. Id. ¶¶ 44–46. Plaintiffs wished to resolve the matter without resorting to court but were prepared to litigate if necessary. Id. ¶ 46. The parties continued settlement discussions, by phone and email, from late February through early March 2023. Id. The parties spoke by phone on March 7, 2023. Neither indicated a suit was imminent. Id. ¶¶ 44–46. Meyers Roman filed suit three days later. Id. ¶ 47.

## III.   Subject Matter Jurisdiction

This Court has subject matter jurisdiction to hear this cause because the parties are in complete diversity, and the amount in controversy is over $75,000. 28 U.S.C. § 1332.

## IV.   Personal Jurisdiction

### A. Legal Standard

When a defendant files a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff must establish the Court's jurisdiction over the moving defendant through "affidavits or other competent evidence." Metcalfe v. Renaissance Marine, Inc., 566 F. 3d 324, 330 (3d Cir. 2009) (quoting Dayhoff Inc. v. H.J. Heinz Co., 86 F. 3d 1287, 1302 (3d Cir.

1996)). When the Court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." <u>Miller Yacht Sales, Inc. v. Smith</u>, 384 F. 3d 93, 97 (3d Cir. 2004) (citing <u>Pinker v. Roche Holdings Ltd.</u>, 292 F. 3d 361, 368 (3d Cir. 2002) and <u>Carteret Sav. Bank, FA v. Shushan</u>, 954 F. 2d 141, 142 n.1 (3d Cir. 1992)).

Unlike a Rule 12(b)(6) motion, a 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside of the pleadings," and thus, often requires assessment of affidavits or other similar evidence submitted by the parties. <u>Patterson by Patterson v. F.B.I.</u>, 893 F. 2d 595, 603 (3d Cir. 1990). When the defendant puts forward affidavits or other evidence in support of a 12(b)(2) motion, the plaintiff must meet its burden that personal jurisdiction lies through pleadings or other evidence. <u>Id.</u>

A federal court sitting in Pennsylvania has jurisdiction over the parties to the extent provided under Pennsylvania state law. <u>See</u> <u>Miller</u>, 384 F. 3d at 96 (citing Fed. R. Civ. P. 4(e)). Pennsylvania law permits a court to exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States," and that exercise of personal jurisdiction "may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b); <u>see</u> <u>Danziger & De Llano, LLP v. Morgan Verkamp LLC</u>, 948 F. 3d 124, 129 (3d Cir. 2020); <u>Miranda v. C.H. Robinson Co.</u>, No. 18-553, 2019 WL 6038539, at *3 (E.D. Pa. Nov. 13, 2019) (Baylson, J.).

For an exercise of personal jurisdiction over a defendant to comport with the Fourteenth Amendment's Due Process Clause, that defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (citation

omitted). "Personal jurisdiction over a defendant may be either general or specific." Chavez v. Dole Food Co., Inc., 836 F. 3d 205, 223 (3d Cir. 2016) (en banc). Here, the Court's jurisdiction turns on specific jurisdiction, which requires three elements.

First, the "defendant must have 'purposefully directed [its] activities'" toward Pennsylvania. O'Connor v. Sandy Lane Hotel Co., 496 F. 3d 312, 317 (3d Cir. 2007) (alteration in original) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). Second, the claims "must 'arise out of or relate to'" the defendants' activities in Pennsylvania. O'Connor, 496 F. 3d at 217 (quoting Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414 (1984)). Finally, a finding of personal jurisdiction must not "offend traditional notions of fair play or substantial justice." O'Connor, 496 F. 3d at 316 (quoting Int'l Shoe Co., 326 U.S. at 316 (1945)). However, when the first two prongs of the test are met, a defendant must make a "compelling case that the presence of some other consideration would render jurisdiction unreasonable." Burger King, 471 U.S. at 477.

### B.  Personal Jurisdiction Over Out-of-State Law Firms

When evaluating a breach of contract or legal malpractice claim, the attorney-client contract does not "automatically establish sufficient minimum contacts" to the forum state. Grand Ent. Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993). The Third Circuit has emphasized looking to "prior negotiations and contemplated future consequence" of the contractual relationship. Id. (internal citations and quotations omitted). Recognizing the realities of modern commerce, a defendant need not make "[p]hysical entrance" into the forum state to become subject to its jurisdiction. O'Connor, 496 F. 3d at 317 (quoting Burger King, 471 U.S. at 476). Indeed, a defendant's "[m]ail and telephone communications . . . into the forum

may count toward the minimum contacts that support jurisdiction." <u>Grand Ent. Grp., Ltd</u>, 988 F. 2d at 482.

Of course, limited communication between the defendant and plaintiff, "without more" will not establish jurisdiction. <u>IMO Indus., Inc. v. Kiekert AG</u>, 155 F. 3d 254, 260 n. 3 (3d Cir. 1998). The question is not quantity alone, but the quality of communication, for "even a single telephone call into the forum state can support jurisdiction." <u>Mendelsohn, Drucker & Assocs. v. Titan Atlas Mfg., Inc.</u>, 885 F. Supp. 2d 767, 780 (E.D. Pa. 2012) (Baylson, J.). The inquiry is case-by-case because it must "hew closely to the reciprocity principle upon which specific jurisdiction rests." <u>O'Connor</u>, 496 F. 3d at 323. Every contact, depending on its substance, will "extend certain benefits and impose certain obligations" that represents the quid pro quo underlying specific jurisdiction: for the benefit of doing business in a forum state, a proportional obligation to the forum arises. <u>Id.</u>

In the context of legal malpractice suits, the location of the underlying matter is essential. A survey of cases from across jurisdictions elucidates this principle. In <u>Danziger & De Llano, LLP v. Morgan Verkamp LLC</u>, 948 F.3d 124, 128 (3d Cir. 2020) and <u>Reliance Steel Prod. Co. v. Watson, Ess, Marshall & Enggas</u>, 675 F.2d 587, 589 (3d Cir. 1982), plaintiffs sued defendant law firms in Pennsylvania courts. The defendants were out-of-state; only specific jurisdiction could apply. In both cases, the underlying contracts were premised on matters outside the Commonwealth. In <u>Reliance Steel</u>, Pennsylvania plaintiffs hired the defendant law firm for legal services in Kansas that took place in Kansas. <u>Reliance Steel</u>, 675 F. 2d at 589 ("[t]he res of the action was located in Kansas, the replevin bond in issue was negotiated in Kansas, an ex parte order of replevin was issued by a Kansas judge."). <u>Danziger</u> made a similar holding. There, the Texas plaintiff alleged an Ohio defendant breached an "oral [legal] referral contract that was

11

neither formed nor breached in Pennsylvania." <u>Danziger</u>, 948 F. 3d at 130. While defendants eventually litigated the referred legal matter in Pennsylvania, the underlying <u>referral</u> contract and its breach had nothing to do with the Pennsylvania. <u>Id.</u> In both cases, the Court found Pennsylvania lacked personal jurisdiction over the defendants.

This makes sense. When an out-of-state attorney works on an out-of-state matter for a client who happens to reside in the forum state, the forum contacts are clearly "fortuitous, random, and attenuated," such that they are not truly directed toward the forum state. <u>Toys "R" Us, Inc. v. Step Two, S.A.</u>, 318 F. 3d 446, 455 (3d Cir. 2003) (internal quotations and citations omitted). That is, the substantive matter does not relate to the forum state.

On the other hand, courts consistently extend jurisdiction over non-forum law firms when they were hired to perform legal services inside of, or related to, the forum state. <u>See, e.g.</u>, <u>Resolution Trust Corp. v. Farmer</u>, 836 F. Supp. 1123, 1129 (E.D. Pa 1993) (extending personal jurisdiction over out-of-state law firm that purportedly made misrepresentations in opinion letters under Pennsylvania law); <u>Allen v. James</u>, 381 F. Supp. 2d 495 (E.D. Va. 2005) (finding Virginia retained personal jurisdiction over South Carolina law firm that was hired by plaintiff to represent her in a personal injury claim that occurred in Virginia); <u>Alonso v. Line</u>, 846 So. 2d 745 (La. 2003) (same in Louisiana); <u>Scheuer v. Dist. Ct., In & For City & Cnty. of Denver</u>, 684 P.2d 249, 251 (Colo. 1984) (finding Colorado retained personal jurisdiction over Virginia lawyer hired to assist a Colorado corporation with its financial matters); <u>Wadlington v. Rolshouse</u>, 2008 WL 1712293 (W.D. Ky. 2008) (finding Kentucky retained personal jurisdiction over Minnesotan law firm that was engaged to represent decedent's estate in Kentucky); <u>Turner v. Tranakos</u>, 744 P. 2d 898 (Mont. 1987) (finding Montana retained personal jurisdiction over Georgia lawyer who represented plaintiff in Montana foreclosure proceeding). Here too, the logic tracks the

precedent. When a forum resident retains a law firm to render services on a forum state matter, it

is purposefully availing itself of the protections and obligations of the forum state's laws.

O'Connor, 496 F. 3d at 318. Moreover, a legal service contract for performance in the forum

state almost necessarily contemplates future consequences in that state. Grand Ent. Grp., Ltd.,

988 F. 2d at 482

### C.  Analysis

First, taking the allegations in the Complaint, statements from Plaintiffs' affidavits, and

Meyers Roman's uncontested evidence, in the light most favorable to Plaintiffs, Meyers Roman

purposefully directed its activities toward Pennsylvania. Plaintiffs' contentions align with the

cases where the legal matter in the forum state established personal jurisdiction. According to the

retention agreement and Baird's affidavits, the entirety of Meyers Roman's representation was

directed toward the Pennsylvania development project. Baird Aff. ¶¶ 8, 15; Leg. Serv.

Agreement 1–4. Meyers Roman chartered new LLCs subject to Pennsylvania law and submitted

the organization paperwork to the Pennsylvania Secretary of State, drafted memoranda about the

project to attract investors to the Pennsylvania project, and negotiated equity structures for

investors to join the Pennsylvania development. Baird Aff. ¶¶ 8, 15–18.; Leg. Serv. Agreement

1–4. Further, Meyers Roman held themselves out as an expert in this field. Baird Aff. ¶ 27.[2]

During the approximately two years of service, Meyers Roman repeatedly communicated with

Baird about the Pennsylvania project. Pl. Resp. 10. The Pennsylvania-related activities were not

incidental to Meyers Roman's representation; they were the entire point of it. Additionally,

---

[2] That Baird first contacted Meyers Roman is inconsequential—the process of contract formation and performance, not selection, is dispositive for the first prong of personal jurisdiction analysis. Mendelson, 885 F. Supp. 2d at 790; see also Carteret, 954 F. 2d at 150 (declining to "attach significance" to whether plaintiff first solicited law firm defendant because "purposeful availment" was met through other contacts).

negotiation and performance of the contract only contemplated services for the Harrisburg project. Grand Ent. Grp., Ltd., 988 F. 2d at 482

Second, Plaintiffs' claims arise out of Meyers Roman's activities in Pennsylvania. Plaintiffs assert that Meyers Roman committed legal malpractice (Counts I and II) and made misrepresentations (Count III) to them that resulted in the Project not qualifying for desired tax benefits. In breach of contract claims, the "arises out of" element is met when the forum state contacts are "instrumental in either the formation" or breach of contract. Danziger, 948 F. 3d at 130. Because the entirety of contract performance was directed toward Pennsylvania, the forum state contacts are the foundation of the malpractice claims. Id. Regarding the misrepresentation claim, the misrepresentations about the Harrisburg entities were the "focal point of the tortious activity" and Plaintiffs felt "the brunt of the harm in the forum." IMO Indus., 155 F. 3d at 255–56.

Finally, a finding of personal jurisdiction comports with fair play and substantive justice. Minimum contacts "makes jurisdiction presumptively constitutional." O'Connor, 496 F. 3d at 324. The burden rests with Meyers Roman to demonstrate a "compelling case that the presence of some other consideration would render jurisdiction unreasonable." Burger King, 471 U.S. at 477. This Court considers "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental social policies." Id. While travel from Ohio to eastern Pennsylvania is inconvenient, it is not overly cumbersome. Moreover, Pennsylvania harbors a strong interest in adjudicating a dispute over a significant development project in its capital. Plaintiffs, as Pennsylvanians, have significant interests in litigating the issue

in Pennsylvania. None of the other factors appear to heavily favor Ohio or Pennsylvania for jurisdiction, thus falling far short of the "compelling case" that Meyers Roman needs to make. See O'Connor, 496 F. 3d at 324-35 (retaining Pennsylvania jurisdiction over Barbados defendant despite burdens of international travel).

The critical distinction between this case and those Meyers Roman cites in its brief is the location of the underlying legal matter. In fact, many of the firm's cited authority highlights this important fact. See Asanov v. Gholson, Hicks & Nichols, P.A., 209 F. App'x 139, 142 (3d Cir. 2006) (holding no specific jurisdiction over out-of-state defendant because plaintiff's cause of action did not arise from communications with Pennsylvania clients, but rather from alleged defective performance in a Mississippi litigation); Cerberus Partners, L.P. v. Gadsby & Hannah, LLP, 836 A. 2d 1113, 1120 (R.I. 2003) ("We hold, therefore, that in this case third-party defendant law firm's representation of a Rhode Island client, in which no legal services were performed within the state other than mailing invoices to the client, does not support the exercise of personal jurisdiction") (emphasis added). Meyers Roman's closest analog is Cent. States Dev., LLC v. Friedgut, 981 N.W. 2d 573 (Neb. 2022). There, the Nebraska Supreme Court rejected personal jurisdiction over an Illinois law firm that was hired by the plaintiff to secure a federal housing benefit on a property in Nebraska. First, the Nebraska Supreme Court does not bind this one. Even so, the state supreme court highlighted that defendant's "representation was specific to HUD and federal law; as such, we are unconvinced that [defendant] reasonably anticipated being haled into a Nebraska court[.]" Id. at 584–85 (emphasis added). Whereas here, Meyers Roman created Pennsylvania chartered LLCs, signed the LLC Operating Agreements and filed them with the Pennsylvania Secretary of State. LLC Organizing Papers 3, 7; KRB Operating

Agreement ¶ 13.10; 400 Reily Street Management Operating Agreement ¶ 16. Its representation

extended beyond federal matters into Pennsylvania law. C.f. Id.

V.    **Forum Selection Clause[3]**

In the alternative, Meyers Roman asks this Court to enforce the forum selection clause

included in the legal service agreement. Generally, Meyers Roman is correct that a valid forum

selection clause, like the one at issue, is "given controlling weight" for venue. Atl. Marine Const.

Co. v. U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S. 49, 63 (2013). Nonetheless, a party may also

waive a venue objection, "even when premised on a forum-selection clause." In re: Howmedica

Osteonics Corp, 867 F. 3d 390, 407 (3d Cir. 2017).

Judge Bibas, sitting by designation, recently considered when a party waives a forum-

selection clause. Verint Americas Inc. v. Fornell, 2022 WL 4079180 (D. Del. Sept. 6, 2022)

(Bibas, J.). There, "[t]wo companies sued a third in Michigan. But the third thought those

Michigan suits were barred by an earlier agreement. So it sued the first two companies [ ] in

Delaware to enforce" the forum selection clause for Delaware. Id. at *1. In finding that the "third

company" (Delaware plaintiff) did not waive a forum selection objection when it defended the

lawsuit in Michigan, Judge Bibas contrasted the case with "the decisive difference between the

initiation of an action, which may constitute a waiver of a forum selection clause, and the

defense of a suit." Id. at *3 (quoting Rite Aid Hdqtrs Corp. v. Nest Int'l, 2019 WL 9100331 at *2

(E.D. Pa Mar. 13, 2019)) (emphasis added). Other courts in the Circuit have held the same. See

---

[3] Rule 12(b)(3) motions to dismiss or transfer based on improper venue, like Rule 12(b)(2) motions, allow the Court
to consider evidence—such as affidavits—found outside the Complaint. Bockman v. First Am. Mktg. Corp., 459 F.
App'x 157, 158 (3d Cir. 2012).

N. Am. Commc'ns, Inc. v. Herman, 2018 WL 581069 at *7 (W.D. Pa Jan. 25, 2018) (finding both parties waived forum selection clause when they initiated lawsuits in other jurisdictions).

Meyers Roman filed suit in the Northern District of Ohio seeking judgment on the legal malpractice claim. The forum selection clause expressly cabined jurisdiction to one of two state courts. By initiating legal action in a federal court before this suit, Meyers Roman waived its right to enforce the selection clause now.[4]

## VI.     The First-Filed Rule[5]

Generally, "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." E.E.O.C. v. Univ. of Pennsylvania, 850 F. 2d 969, 971 (3d Cir. 1988). However, the rule is not "rigid or inflexible [ ] to be mechanically applied." E.E.O.C., 850 F. 2d at 976. The "letter and spirt" of the rule "are grounded on equitable principles" meant to "avoid burdening the federal judiciary" with multiple actions over the same matter and "to prevent the judicial embarrassment of conflicting judgments." Id. at 977.

The Third Circuit has described at least six reasons to depart from the first-filed rule. The exceptions are:

(1) the existence of rare or extraordinary circumstances;

(2) the first-filer acted inequitably;

(3) the first-filer acted in bad faith;

---

[4] Finding Meyers Roman waived enforcement of the forum selection clause, this Court does not address parties' arguments whether the companies not included in the legal service agreement are bound by the forum selection clause.

[5] Dismissal under the first-filed rule is a venue objection. See Sinclair Cattle Co., Inc. v. Ward, 80 F. Supp. 553 (E.D. Pa. 553). Therefore, supra, this Court considers evidence outside of the Complaint in its disposition, considering all factual disputes in the light most favorable to Plaintiffs.

(4) the first-filed action is a result of forum shopping;

(5) the later-filed action is further developed than the first-filed action; or

(6) the first-filer instituted suit in anticipation of the opposing party's imminent suit in a less favorable forum.

Id. at 972, 976. When a party files suit to foreclose good-faith settlement negotiations, the Court may consider departing from the rule. Koresko v. Nationwide Life Ins. Co., 403 F. Supp. 2d 394, 402 (E.D. Pa. 2005). A party acts in inequitably when they lull their opponent into good-faith negotiations, all the while preparing to jump the start line for litigation. See IMS Health, Inc. v. Vality Tech. Inc., 59 F. Supp. 2d 454, 463–64 (E.D. Pa. 1999). Thus, courts have slackened the first-filed rule when the first suit commences amidst ongoing good-faith negotiations that functions as a deceptive race to the courthouse. FMC Corp. v. AMVAC Chemical Corp., 379 F. Supp. 2d 733, 744 n. 23 (E.D. Pa. 2005) (collecting cases where Courts declined to follow first-filed rule when suit initiated during ongoing negotiations).

Moreover, the Third Circuit has suggested giving preference to a coercive action over an action for declaratory relief, regardless of the first filed rule. In Honeywell Int'l Inc. v. Int'l Union, the Panel favorably recognized an approach followed by the Sixth and Seventh Circuits, which hold the "first-filed rule ... much more often than not gives way in the context of a coercive action filed subsequent to a declaratory judgment [action]" and thus, the coercive action gains priority, regardless of which case was filed first. 502 Fed. App'x 201, 206 (3d Cir. 2012) (citing Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F. 3d 535, 551–52 (6th Cir. 2007) and Research Automation, Inc. v. Schrade-Bridgeport Int'l, Inc., 626 F. 3d 973, 980 (7th Cir. 2010). The Third Circuit has not issued binding precedent on this question, but several District Court's have followed Honeywell's dicta. Axiall Corp. v. Int'l Chem. Workers

Council of the U.S., 2014 WL 4070777, at *4 (W.D. Pa. June 25, 2014) (relying on Honeywell's distinction between coercive and declaratory relief in declining to follow first-filed rule); Telebrands Corp. v. martFIVE, LLC, 2013 WL 4675558, at *6 (D.N.J. Aug. 30, 2013) (declining to follow the first-filed rule and ordering transfer because the pleading "before this court is a declaratory judgment action and the Minnesota litigation seeks coercive relief"); Stone v. Allied Indus. Supply, LLC, 2023 WL 2808164, at *3 (D.N.J. Apr. 6, 2023) ("The deference ordinarily afforded to a first-filed action is diminished where declaratory relief is sought and a second-filed action seeks substantive relief on the merits.").[6]

This Court declines to follow the first-filed rule for two reasons. First, the Court registers Honeywell's guidance. While non-precedential, the opinion offers the most recent window into the Circuit's view of the interplay of the first-filed rule and declaratory judgements. In this way, the Court finds it worthwhile.

Second, departing from the rule is equitable in these circumstances. Meyers Roman engaged in anticipatory filing when it filed the Ohio action because it was motivated by a fear of imminent suit. At that time, Plaintiffs and Meyers Roman had been engaging in settlement discussion to resolve the claims, which began several months prior. Baird Aff. ¶¶ 44–47. As part of those discussions, Plaintiffs prepared a report of their estimated damages and requested a tolling agreement. Id. The parties exchanged emails and phone calls with frequency. Id. Plaintiffs received a call from Meyers Roman just three days before they filed suit with no mention of its

---

[6] To be sure, District Courts in the Circuit apply the first-filed rule quite differently. Some courts have liberally found E.E.O.C. exceptions satisfied, while others treat departure from the first-filed rule as a rare exception. See Synthes, Inc. v. Knapp, 978 F. Supp. 2d 450, 455 n. 1 (E.D. Pa. 2013) (comparing e.g., Koresko, 403 F. Supp. 2d at 400 ("[D]ue consideration to the orderly administration of justice counsels in favor of ordinarily respecting the first-filed rule") and Southampton Sports Zone, Inc. v. ProBatter Sports, LLC, 2003 WL 22358439, at *4 (E.D. Pa. Sept. 10, 2003) (Dubois, J.) (departures from the first-filed rule are rare) with FMC Corp., 379 F. Supp. 2d at 744 (exceptions to the first-filed rule are not rare, rather, departure occurs where justice requires).

intent to litigate. Id. While it is true that a party need not "unilaterally disarm" when a legal chasm is unbridgeable, the timespan and depth of communications between these parties reflect good faith negotiations. Koresko, 403 F. Supp. 2d at 403. Yet, despite ongoing these negotiations, Meyers Roman, worried that Plaintiffs "intend[ed] to file a complaint for legal malpractice, negligence, and/or breach of contract" in Pennsylvania, initiated the Ohio action. Ohio Comp. ¶ 4; Ex. 3 to Def. Mot. to Dismiss, ECF No. 11–4. Thus, Meyers Roman's admitted motive was to beat Plaintiffs to the courthouse. See Zanghi v. FreightCar America, Inc. 38 F. Supp. 3d 631, 639 (citing departure from first-filed rule when first suit was meant to "preempt the opponents filing of a suit in a different, less favorable forum.") The apparent double-dealing at play—negotiating with Plaintiffs while preparing the Ohio complaint in anticipation of a lawsuit—warrants departure from the first-filed rule.

Meyers Roman's disregard of the forum selection clause reinforces the Court's decision. When a first-filer's conduct justifiably induces the opposing party to hold off its own suit, the Court may depart from the rule. FMC Corp., 379 F. Supp. 2d at 744 n. 23. In its own contract, Meyers Roman bound both parties to Ohio state courts for litigation. Absent waiver, that forum selection controls. Atl. Marine Const. Co., 571 U.S. at 63. Meyers Roman knows this and says as much in their brief. Def. Mot. to Dismiss ¶¶ 36–42. As discussed, filing suit during good-faith settlement negotiations evinces anticipatory filing. FMC Corp., 379 F. Supp. 2d at 740-45. Doing so in an improper forum is even more inequitable because Plaintiffs had less reason to expect it. From their perspective, the forum selection clause foreclosed a "race to the courthouse."  At most, Plaintiffs could have anticipated litigation in Ohio state courts, per the contract. Indeed, Plaintiffs registered surprise when the firm filed the Ohio action three days after the last settlement discussion. Baird Aff. ¶¶ 46–49. Despite Meyers Roman's belief, this action was not

imminent. [7] On the contrary, the timing underscores that Plaintiffs believed the settlement discussions were serious. Thus, Meyers Roman's inducement of Plaintiffs to believe settlement discussions were genuine, while jumpstarting litigation in a venue they could not expect, also militates for a departure.

## VII.    Conclusion

For the foregoing reasons, the Court **DENIES** Meyers Roman's Motion. An order will be forthcoming.

O:\CIVIL 23\23-1974 Baird v Meyers\Memorandum and Order Denying MTD.docx

---

[7] The Court notes the ostensible tension between finding both anticipatory filing (premised on imminent filing by the opposing party) and inequitable conduct (premised on the opposing party's surprise at litigation). They are, however, harmonious. Anticipatory filing only requires the filer subjectively believed that litigation was imminent. See E.E.OC., 850 F. 2d at 976–77 (citing Ven-Fuel Inc. v. Department of Treasury, 673 F. 2d 1194, 1195 (11th Cir. 1982)) ("first filing not controlling when it was made in apparent anticipation of imminent judicial proceedings by opposing party") (emphasis added) (quotations omitted). Thus, the analysis takes account of the filer's belief. Separately, a Court may consider whether the filer's conduct was deceptive toward the opposing party. See Unlimited Technology, Inc. v. Leighton, 266 F. Supp. 3d 787, 794–95 (E.D. Pa. 2017) (finding bad faith because first-filer induced opposing party into believing ongoing settlement negotiations were serious).